IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| Chas Beaman,<br><br>Plaintiff,<br><br>v.<br><br>Mountain America Federal Credit Union,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DISMISSING PLAINTIFF'S COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>FOR PUBLICATION<br><br>Case No. 1:19-cv-00053<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

Plaintiff Mr. Chas Beaman filed a state-law, breach-of-contract claim and proposed class action against Defendant Mountain America Federal Credit Union in this court on May 31, 2019. *See* Dkt. No. 2 ("Compl."). Defendant is a federally chartered credit union that does business in multiple States. *See id.* ¶ 8; Dkt. No. 49-2. For the following reasons, the court dismisses this case without prejudice for lack of subject matter jurisdiction.

**I.**

Plaintiff and the members of the proposed class hold checking accounts with Defendant. *See* Compl. ¶¶ 28, 50. In his sole claim for relief, Plaintiff alleges that Defendant wrongfully charged him and the members of the proposed class overdraft fees in violation of their contracts and the implied covenant of good faith and fair dealing. *See id.* ¶¶ 50, 60–72. Plaintiff alleges that he "is an individual and resident of Weber County, Utah," *id.* ¶ 7, and that Defendant's "principal place of business [is] located in Salt Lake County, Utah," *id.* ¶ 8. Plaintiff further alleges that "(1) the proposed class [comprises] at least 100 members; (2) proposed class

members reside in states outside of Utah; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs." *Id.* ¶ 9. Plaintiff alleges that this court thus has jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). *See id.* Rather than filing an answer, Defendant asked this court to compel arbitration and dismiss the case. *See* Dkt. No. 11. The court heard argument on this motion on October 15, 2019. *See* Dkt. No. 42.

The court later requested briefing addressing this court's subject matter jurisdiction. The court first ordered both parties to file briefs addressing whether the court "has subject matter jurisdiction in this case in light of 28 U.S.C. § 1332(d)(4) or, if the court has subject matter jurisdiction, whether it should exercise its jurisdiction in light of § 1332(d)(3)." Dkt. No. 43. Broadly speaking, Sections 1332(d)(3) and 1332(d)(4) place limits on this court's jurisdiction where a significant portion of the class members are citizens of the same State as the defendant and the same State in which the action was originally filed. *See* 28 U.S.C. §§ 1332(d)(3) & (d)(4). The court next directed Plaintiff to file a brief addressing whether the court has subject matter jurisdiction given Defendant's status as a federal credit union doing business in multiple States. *See* Dkt. No. 48. Although the caselaw is not uniform, several district courts have dismissed diversity actions against federal credit unions for lack of subject matter jurisdiction, holding that federal credit unions lack the citizenship required to invoke federal jurisdiction under 28 U.S.C. § 1332. *Compare Pierson v. Alaska USA Fed. Credit Union*, No. 2:19-cv-1685, 2020 WL 747857, at *2 (W.D. Wash. Feb. 14, 2020), and *Navy Fed. Credit Union v. LTD Fin. Serv., LP*, 368 F. Supp. 3d 889, 898 (E.D. Va. 2019), *with Lloyd v. Navy Fed. Credit Union*, No. 17-cv-1280, 2019 WL 2269958, at *6 (S.D. Cal. May 28, 2019). The court has carefully considered the parties' briefs filed in response to these orders.

## II.

Federal courts "have limited subject matter jurisdiction and may only hear cases 'when empowered to do so by the Constitution and by act of Congress.'" *Radil v. Sanborn Western Camps, Inc.*, 384 F.3d 1220, 1225 (10th Cir. 2004) (quoting 16 James Wm. Moore, *Moore's Federal Practice* § 108.04(2) (3d ed. 2003)). It is well settled that "no action of the parties can confer subject-matter jurisdiction upon a federal court": "the consent of the parties is irrelevant, principles of estoppel do not apply, and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) (internal citations omitted). Nor may subject matter jurisdiction be "expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). Regardless of whether the parties contest the issue, a court may "raise lack of subject-matter jurisdiction on its own motion." *Ins. Corp. of Ireland*, 456 U.S. at 702; *see also* Fed. R. Civ. P. 12(h)(3). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Plaintiff alleges that this court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) over the state-law claim that he asserts on behalf of himself and the proposed class. *See* Compl. ¶ 9. This statute confers "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which (A) any member of a class of plaintiffs is a citizen of a State different from any defendant; (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or (C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state." While this provision thus requires only minimal diversity, *see, e.g.*, *Standard Fire Ins. Co.*

*v. Knowles*, 568 U.S. 588, 592 (2013), it still requires that Defendant be a foreign state or have state or foreign citizenship. After carefully considering the Federal Credit Union Act, *see* 12 U.S.C. § 1751 *et seq.*, the relevant caselaw, and Plaintiff's arguments, this court concludes that Defendant, as a federally chartered corporation, is not a citizen of any State, a foreign state, or a citizen or subject of any foreign state. Plaintiff thus may not invoke this court's diversity jurisdiction under Section 1332(d)(2).[1]

Federally chartered credit unions, like Defendant, are federal corporations. *See* 12 U.S.C. § 1754; *Navy Fed. Credit Union*, 368 F. Supp. 3d at 893; *see also* Dkt. No. 12 ("Corporate Disclosure"). "Because a federally chartered corporation is incorporated under acts of Congress, rather than under state laws, it generally has national citizenship but no state citizenship." *Hayward v. Chase Home Finance, LLC*, No. 3:10-cv-2463, 2011 WL 2881298, at *3 (N.D. Tex July 18, 2011) (citing *Bankers' Trust Co. v. Texas & Pacific Ry. Co.*, 241 U.S. 295, 309 (1916)); *see also Navy Federal Credit Union*, 368 F. Supp. 3d at 897.

In *Bankers' Trust*, for example, the Supreme Court held that a federally chartered interstate railroad was "not a citizen of any state" because "[i]t was incorporated under acts of Congress, not under state laws; and its activities and operations were not to be confined to a

---

[1] Plaintiff has also failed to adequately allege his own citizenship, as well as the citizenship of the proposed class members, instead alleging only that he "is an individual and *resident* of Weber County, Utah," Compl. ¶ 7 (emphasis added), and that "proposed class members *reside* in states outside of Utah," *id.* ¶ 9 (emphasis added). But from the earliest days of our Republic, it has been well settled that diversity jurisdiction requires allegations of *citizenship* and that allegations of residency will not suffice. *See, e.g.*, *Abercrombie v. Dupuis*, 1 Cranch 343, 343 (1803); *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1238 (10th Cir. 2015); *Whitelock v. Leatherman*, 460 F.2d 507, 514–15 (10th Cir. 1972). These pleading defects could likely be cured by amendment, however. *See* 28 U.S.C. § 1653. Because the court holds that Defendant's lack of state (or foreign) citizenship is fatal to this court's power to adjudicate Plaintiff's sole claim against Defendant, and because this jurisdictional defect cannot be so cured, the court's analysis focuses on Defendant's citizenship.

single state, but to be carried on, as in fact they are, in different states." *Bankers' Trust*, 241 U.S. at 309. The Court further held that the railroad lacked state citizenship because it did not fall "within the clause of the 14th Amendment which declares that native born and naturalized citizens of the United States shall be citizens of the state wherein they reside" and because Congress had not otherwise provided that "it shall be regarded as possessing state citizenship for jurisdictional purposes." *Id.* at 309–10. There was thus "no ground upon which the company [could] be deemed a citizen of" any State. *Id*. at 310. And as the Supreme Court more recently reaffirmed, because federally chartered corporations "are not incorporated by 'any State'" they do not "fit comfortably within" the statutory framework conferring diversity jurisdiction over claims by or against state or foreign corporations. *Wachovia Bank v. Schmidt*, 546 U.S. 303, 306 (2006). As a result, although a federal corporation can of course sue or be sued in federal court on a federal cause of action pursuant to 28 U.S.C. § 1331, it may not sue or be sued in federal court on state-law causes of action pursuant to 28 U.S.C. § 1332 absent additional statutory authorization.

Congress may confer federal jurisdiction over state law claims by or against federal corporations in two ways. First, Congress may expressly assign federally chartered corporations state citizenship for diversity purposes. Congress has, for instance, provided that national banks "shall . . . be deemed citizens of the States in which they are respectively located," 28 U.S.C. § 1348, and the Supreme Court has made clear that this statute authorizes diversity jurisdiction over state-law claims by or against national banks. *See, e.g.*, *Wachovia Bank*, 546 U.S. at 306 (relying on this statute in case involving state-law claims against a federally chartered national bank); *Bankers' Trust*, 241 U.S. at 310 (contrasting federally chartered railroad with national banks in light of this statute). Congress has enacted similar statutes assigning state citizenship for

diversity jurisdiction purposes to farm credit banks, land bank associations, and farm credit associations, *see* 12 U.S.C. § 2258; savings associations, *see* 12 U.S.C. § 1464(x); Amtrak, *see* 49 U.S.C. § 24301(b); the Telecommunications Development Fund, *see* 47 U.S.C. § 614(b); and Fannie Mae, *see* 12 U.S.C. § 1717(a)(2). *See also Philadelphia Indem. Ins. Co. v. U.S. Olympic Comm.*, No. 19-cv-01231, 2020 WL 610798, at *2 (D. Colo. Jan. 28, 2020) (collecting statutes and finding that "[n]either the [U.S. Olympic Committee's] charter nor any subsequent act of Congress provides for state citizenship of the [U.S. Olympic Committee] in Colorado or in any other state").

Plaintiff does not identify, and the court has not found, any provision in the Federal Credit Union Act or other act of Congress that assigns state citizenship to federally chartered credit unions for purposes of diversity jurisdiction. *See* 12 U.S.C. § 1751 *et seq.*; *cf.* Paul E. Lund, *Federally Chartered Corporations and Federal Jurisdiction*, 36 Fla. St. U. L. Rev. 317, 370 n.303 (2009) (noting that "the statutes governing federal credit unions include no provision regarding federal jurisdiction"). Nor can statutes assigning state citizenship to national banks or other lending institutions plausibly be construed to assign state citizenship to federal credit unions given the care with which Congress has otherwise distinguished between different types of financial institutions and its distinctive treatment of federal credit unions. *See, e.g.*, *First Fed. Sav. & Loan Assoc. of Boston v. State Tax Comm.*, 437 U.S. 255, 260 (1978) (noting that "Congress has long treated federally chartered credit unions differently from federally chartered savings and loan associations, giving the credit unions, but not the savings and loan associations, an exemption from state taxes"); *TI Fed. Credit Union v. DelBonis*, 72 F.3d 921, 933 (1st Cir. 1995) ("Congress, in exempting federal credit unions from federal income taxation, has

expressed the view that federal credit unions serve several unique governmental purposes and are, therefore, different from banks.").

Second, Congress may confer federal jurisdiction over state-law claims by or against a federal corporation by authorizing it to sue or be sued in federal court. *See Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 558–65 (2017). While language authorizing a federal corporation to sue and be sued "serves the uncontroversial function of clarifying [a federal corporation's] capacity to bring suit and to be sued," the Supreme Court has long held that these clauses may also "go[] further and grant[] federal courts jurisdiction over all cases involving" the federal corporation. *Id.* at 559. For example, in *Osborn v. Bank of United States*, the Court held that language in the second Bank of the United States' charter authorizing it "'to sue and be sued . . . *in any Circuit Court of the United States*'" conferred federal jurisdiction over all suits by or against the Bank because of its explicit reference to the federal courts. 9 Wheat. 738, 817–18 (1824) (emphasis added); *see also, e.g*., *American Nat'l Red Cross v. S.G*., 505 U.S. 247, 251, 257 (1992) (holding that language authorizing the Red Cross to "sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States" conferred federal jurisdiction).

By contrast, in *Bank of United States v. Deveaux*, the Court held that language in the first Bank of the United States' charter authorizing it "'to sue and be sued . . . in courts of record, or any other place whatsoever'" did not confer federal jurisdiction over claims by or against the bank. 5 Cranch 61, 85–86 (1809). Unlike the clause later addressed in *Osborn*, the clause at issue in *Deveaux* did not explicitly mention the federal courts. *Compare id.*, *with Osborn*, 9 Wheat. at 818; *see also, e.g*., *Bankers Trust*, 241 U.S. at 303 (holding that language authorizing a federal railroad "to sue and be sued . . . in all courts of law and equity within the United States" did not

confer federal jurisdiction). The Court in *Deveaux* also noted that a separate section of the first Bank's charter did expressly authorize private individuals to sue the president and directors of the Bank in federal courts. *See Deveaux*, 5 Cranch at 86 (referencing Article 9, Section 7 of the first Bank's charter).

"'[T]he basic rule' drawn [from] *Deveaux* and *Osborn*," then, is "that a sue-and-be-sued clause conferring only a general right to sue does not grant jurisdiction to the federal courts." *Lightfoot*, 137 S. Ct. at 561 (quoting *American Nat'l Red Cross*, 505 U.S. at 253). Rather, such a clause must at a minimum authorize suit in federal courts. *See Lightfoot*, 137 S. Ct. at 561. And while language explicitly referencing the federal courts is thus necessary to confer federal jurisdiction, it is not necessarily sufficient. Indeed, in *Lightfoot* the Supreme Court held a clause authorizing Fannie Mae to "sue and be sued . . . in any court of competent jurisdiction, State or Federal," *id*. at 558–59, did not confer federal jurisdiction over claims by or against Fannie Mae, even though its "mention of the federal courts . . . clear[ed] a hurdle that the clauses in *Deveaux* and *Bankers Trust* did not," *id*. at 560.

Although the Federal Credit Union Act provides that "[a] Federal credit union . . . shall have power . . . to sue and be sued," it makes no reference to federal courts. 12 U.S.C. § 1757(2). This language thus fails to confer federal jurisdiction over state-law claims for or against a federal credit union. Furthermore, as in *Deveaux*, 5 Cranch at 86, a separate provision of the Federal Credit Union Act does expressly mention suits in federal court: Section 1795f(a)(9) provides that "[t]he [National Credit Union Administration Board] on behalf of the [Central Liquidity Facility] shall have the ability to . . . sue and be sued, complain, and defend, *in any* State or *Federal court*." 12 U.S.C. § 1795f(a)(9) (emphasis added).

Because Defendant is a federally chartered credit union, it does not "fit comfortably" within the statutes authorizing diversity jurisdiction over suits by or against state or foreign corporations. Nor has Congress enacted specific legislation assigning state citizenship to federal credit unions or authorizing federal credit unions to sue or be sued in federal court. Applying the Supreme Court's well-settled jurisprudence, this court thus holds that it lacks subject matter jurisdiction over the state-law claim asserted here.

### III.

Plaintiff presses two contrary arguments. First, Plaintiff argues that the court has subject matter jurisdiction here because Congress granted federally chartered corporations state citizenship in 1958 when it amended 28 U.S.C. § 1332, the diversity jurisdiction statute, by adding Section 1332(c)(1). *See* Dkt. No. 49 at 2–4 (citing *Lloyd*, 2019 WL 2269958). At the time of this amendment, courts had long deemed corporations citizens of their States of incorporation for purposes of diversity jurisdiction. *See Hertz Corp. v. Friend*, 559 U.S. 77, 84–85 (2010) (detailing the development of this long-settled judicial rule). Section 1332(c)(1) not only provides that a corporation shall be deemed a citizen of its State or foreign state of incorporation—thus "codif[ying] the courts' traditional place of incorporation test," *Hertz Corp.*, 559 U.S. at 88—but also that a corporation shall be deemed a citizen "of the State or foreign state where it has its principal place of business." Second, Plaintiff argues that even his first argument is rejected, the court should find that Defendant is a citizen of Utah because its activities are "located" here under a judicially created "localization exception" for federally regulated credit unions. *See* Dkt. No. 49 at 4–7. The court rejects both arguments.

9

## A.

Plaintiff's proposed interpretation of Section 1332(c)(1) is contrary to the best reading of the statute. "When interpreting the language of a statute, the starting point is always the language of the statute itself." *Center for Legal Advocacy v. Hammons*, 323 F.3d 1262, 1267 (10th Cir. 2003) (citation and internal quotation marks omitted). "In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *Id.* (citation and internal quotation marks omitted).

In its current form, 28 U.S.C. § 1332(c)(1) provides in relevant part that "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." The court concludes that the statutory reference to "a corporation" is best read to exclude federal corporations. Not only does the statute nowhere mention federal incorporation, it expressly connects each "corporation" to one or more "State[s]" or "foreign state[s]" of incorporation. The statute thus plainly contemplates that each "corporation" to which it applies has been incorporated by at least one "State" or "foreign state." Thus, as the Supreme Court explained—decades after the 1958 amendment:

> A business organized as a corporation, for diversity jurisdiction purposes, is "deemed to be a citizen of any State which it has been incorporated" and, since 1958, also "of the State where it has its principal place of business." § 1332(c)(1). State banks, usually chartered as corporate bodies by a particular State, ordinarily fit comfortably within this prescription. Federally chartered national banks do not, for they are not incorporated by "any State."

*Wachovia Bank*, 546 U.S. at 306.

When Section 1332 was amended in 1958, moreover, it was well settled that this statute excluded federal corporations and that a federal corporation was not a citizen of any State for purposes of diversity jurisdiction unless Congress had enacted a separate statute expressly

assigning it state citizenship. *See Bankers' Trust*, 241 U.S. at 309–10. "The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." *Midlantic Nat'l Bank v. New Jersey Dept. of Envtl. Prot.*, 474 U.S. 494, 501 (1986). Had Congress intended the 1958 amendment to bring federal corporations within the scope of Section 1332, it would have thus done so expressly. But it did not. To the contrary, as noted above, Section 1332(c)(1) says nothing whatsoever about federal corporations, addressing only state or foreign incorporation.

Congress, certainly, does not appear to have understood its 1958 amendment to have abrogated the well-settled rule set forth in *Bankers' Trust* or to have tacitly swept federal corporations within the scope of Section 1332. To the contrary, since the 1958 amendment, Congress has passed multiple statutes assigning state citizenship to specific types of federal corporations such as "farm credit banks, land bank associations, and [farm] credit associations, 12 U.S.C. § 2258, savings associations, 12 U.S.C. § 1464(x), Amtrak, 49 U.S.C. § 24301(b), and the Telecommunications Development Fund, 47 U.S.C. § 614(b)." *Philadelphia Indem.*, 2020 WL 610798, at *2. Plaintiff's sweeping reading of the 1958 amendment would render all of these superfluous.[2]

---

[2] For those who care about such things, the court notes that the legislative history of the 1958 amendment also supports its reading of Section 1332(c)(1). That history indicates that the 1958 amendment was the culmination of decades-long efforts to slow the growth of federal dockets and prevent corporations from manipulating their place of incorporation to facilitate access to federal court. *See Hertz Corp.*, 559 U.S. at 85–88; *see also* H.R. Rep. No. 1706, at 9 (statement of Joseph F. Spaniol) ("One of the principal aims of these proposals [regarding Section 1332(c)] is to alleviate the crowded conditions in the district courts which have been prevalent for the last decade by eliminating the filing of cases which concern controversies purely local in nature, though one of the parties may be a corporation chartered in another State."). At the time of the amendment it was well settled, of course, that Section 1332 did not by itself confer federal jurisdiction over state-law claims by or against federal corporations. Reading the 1958 amendment to tacitly overrule precedent and open the federal courts to a class of claims long barred from federal court would be in significant tension with the stated legislative desire to

The Supreme Court likewise has not questioned the ongoing vitality of *Bankers' Trust*, nor does it appear to have understood the enactment of Section 1332(c)(1) to eliminate the need for separate, specific statutes to confer federal jurisdiction over state-law claims by or against federal corporations. To the contrary, the Court has not only recently observed that federally chartered national banks do not "fit comfortably" within the language of Section 1332(c)(1), "for they are not incorporated by 'any State,'" but has also explained that this is why "[f]or diversity jurisdiction purposes, . . . Congress has discretely provided that national banks 'shall . . . be deemed citizens of the States in which they are respectively located.'" *Wachovia Bank*, 546 U.S. at 306 (quoting 28 U.S.C. §§ 1332(c)(1) & 1348); *see also id.* at 317 n.9 (contrasting Section 1332(c)(1)'s prescription that a state corporation "shall be deemed to be a citizen of any State by which it has been incorporated *and* of the State where it has its principal place of business" with "the counterpart provision for national banking associations" and observing that Section 1348 "does not refer to 'principal place of business'; it simply deems such associations 'citizens of the States in which they are respectively located'" but that "[t]he absence of a 'principal place of business' reference in § 1348 may be of scant practical significance for, in almost every case, as in this one, the location of a national bank's main office and of its principal place of business coincide"). The Court has also continued to develop and elaborate its jurisprudence regarding when sue-and-be-sued clauses confer federal jurisdiction and when they do not, *see, e.g.*, *Lightfoot*, 137 S. Ct. 553; *American Nat'l Red Cross*, 505 U.S. 247—an enterprise that would be

---

slow the growth of federal dockets by restricting corporate access to federal court. Had Congress intended or even anticipated this result, it would have almost certainly been the subject of discussion and debate. Yet the court has found no suggestion in the legislative history that the amendment was intended to expand federal corporations' access to federal court. *Cf. Navy Fed. Credit Union*, 368 F. Supp. 3d at 897 (noting that "aside from a non-substantive mention in an appendix, § 1332(c)'s legislative history does not contain a single reference to federally chartered corporations or the law governing them").

of considerably less import if federal corporations could claim state citizenship and invoke

diversity jurisdiction under Section 1332.[3]

In addition, Section 1332(c)(1) provides that a corporation is a citizen "of every State and

foreign state by which it has been incorporated *and* of the State or foreign state where it has its

principal place of business." (Emphasis added.) The statute's use of the conjunction "and" is

most naturally read to contemplate that a corporation will have both state or foreign

incorporation *and* a principal place of business. *See Wachovia*, 546 U.S. at 317 n.9 ("Congress

has prescribed that a corporation 'shall be deemed a citizen of any State by which it has been

incorporated *and* of the State where it has its principal place of business.'") (emphasis in

*Wachovia*). Plaintiff's reading would require the court to rewrite the statute by inserting "if any"

after "every State and foreign state by which it has been incorporated."[4]

To be sure, some circuit courts have held that a "dormant" or "inactive" corporation need

not have a principal place of business to be a state citizen under Section 1332(c)(1). For example,

---

[3] Because a state-law claim brought pursuant to a sue-and-be-sue clause that confers federal jurisdiction need not satisfy Section 1332's amount in controversy requirement, the Supreme Court's jurisprudence regarding such clauses would not be entirely meaningless if the 1958 amendment had brought federal corporations within the scope of Section 1332. Indeed, the Court's decision in *Lightfoot* involved Fannie Mae, to which Congress had assigned state citizenship in 12 U.S.C. § 1717(a)(2). That is presumably why the *Lightfoot* Court explained that despite its ruling "[t]he doors to federal court remain open to Fannie Mae through *diversity* and federal question jurisdiction." 137 S. Ct. at 564 (emphasis added).

[4] Neither Plaintiff nor the court in *Lloyd* relies on the insurer exception in § 1332(c)(1). Under this exception, "in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of (A) every State and foreign state of which the insured is a citizen; (B) every State and foreign state by which the insurer has been incorporated; and (C) the State or foreign state where the insurer has its principal place of business." This exception does not support Plaintiff's argument here. Not only does it apply to an "insurer" rather than a "corporation," it expressly contemplates that an insurer may be "incorporated or unincorporated." While the express contemplation of unincorporated insurers may require reading "if any" after section (B) of the exception, no comparable language requires reading such language into the portion of Section 1332(c)(1) at issue here.

the Third Circuit has held that the use of "and" in Section 1332(c)(1) does not require courts to "strain to locate a principal place of business when no such place in reality exists," rejecting "the notion that implicit in the statute's terms is the requirement that *all* corporations be deemed to have a principal place of business." *Midlantic Nat'l Bank v. Hansen*, 48 F.3d 693, 698 (3d Cir. 1995). Plaintiff does not mention these out-of-circuit decisions and, even if they were controlling in this circuit, they would not change the court's analysis here. While these decisions' reading of the conjunctive "and" may arguably provide some support by analogy for Plaintiff's position, these decisions in effect read "if any" into the *latter* clause of Section 1332(c)(1), not, as Plaintiff would have this court do, the *former*. And as discussed above, the statute's express linkage of a "corporation" to state or foreign incorporation and its silence regarding federal incorporation provides a compelling reason not to include federally chartered corporations within the scope of Section 1332(c)—especially in light of the well-settled understanding that federal corporations are not citizens of any State or foreign nation for purposes of diversity jurisdiction unless Congress has expressly declared them so. In addition, while it may be true that not all corporations have a principal place of business (if, for example, they are dormant or inactive), all corporations by definition have a place of incorporation. While necessity may thus justify reading "if any" into Section 1332(c)'s principal place of business clause, no similar rationale justifies reading "if any" into this statute's place of incorporation clause, and doing so would have the effect of bringing within the scope of the statute a class of corporations that Congress conspicuously omitted.[5]

---

[5] Plaintiff also argues that "the Tenth Circuit [has] acknowledged that 28 U.S.C. § 1332(c) would apply to an Indian corporation" and that "[s]uch acknowledgement demonstrates that the 10th Circuit would be willing to apply it to other types of federally chartered entities." Dkt. No. 49 at 4 n.4 (citing *Gaines v. Ski Apache*, 8 F.3d 726, 729 (10th Cir. 1993)). The Tenth Circuit's discussion of this issue appears to have been dictum, albeit based on

## B.

Plaintiff also argues that this court should hold that Defendant is a state citizen under a judicially created "localization exception." Some courts have held that if a federally chartered corporation's activities are "limited to a single state, either factually or by charter, then the corporation is [deemed to be] a citizen of that state." *Philadelphia Indem.*, 2020 WL 610798, at *3 (quoting *Little League Baseball, Inc. v. Welsh Pub. Grp., Inc.*, 874 F. Supp. 648, 651 (M.D. Pa. 1995)). Other courts have extended this exception to cases where the federal corporation had "some out-of-state business activities," *Loyola Fed. Sav. Bank v. Fickling*, 58 F.3d 603, 606 (11th Cir. 1995), so long as "the 'overwhelming' amount" of its business is located in a single State, *Arlington Comm. Fed. Credit Union v. Berkley Regional Ins. Co.*, 57 F. Supp. 3d. 589, 595 (E.D. Va. 2014).

Although Congress has assigned state citizenship to national banks and other financial institutions, it has not done so for federal credit unions, however. And "[n]either Congress nor the Supreme Court has recognized the localization doctrine." *Navy Fed. Credit Union*, 368 F. Supp. 3d at 899. Indeed, this court has found no controlling precedent applying—or even referencing—the localization doctrine in any form, and Plaintiff concedes that "the Tenth Circuit has not yet had occasion to discuss the existence or scope of the localization exception." Dkt. No. 49 at 5; *see also Philadelphia Indem.*, 2020 WL 610798, at *3 ("Neither the United States Supreme Court nor the Tenth Circuit has specifically approved a localization exception nor given

---

a Ninth Circuit holding. *See Gaines*, 8 F.3d at 729 (citing *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1223 n.3, 1226 (9th Cir. 1989)). But even if good reasons support reading an Indian Tribe exception into Section 1332(c)(1)'s clear textual requirement of state or foreign incorporation, this court would not on this ground carve out an exception for federally chartered corporations in light of the longstanding—and continuing— special treatment afforded federal corporations by Congress and the Supreme Court.

guidance as to acceptable parameters applicable thereto.").[6] In the absence of statutory authorization or controlling precedent, this court will not presume to expand its jurisdiction "by judicial decree." *Kokkonen*, 511 U.S. at 377.

Even if this court were required to recognize a localization exception, moreover, the court would not find that it applies here. *See Navy Fed. Credit Union*, 368 F. Supp. 3d at 900. First, because Defendant does business outside of Utah, *see, e.g.*, Dkt. No. 49-2 at 29, it is not "localized" under the cases limiting the exception to federal corporations that conduct business within a single State. *See, e.g.*, *Auriemma Consulting Grp., Inc. v. Universal Sav. Bank*, 367 F. Supp. 2d 311, 313 (E.D.N.Y. 2005) (noting that under these cases, "where a federally chartered institution does business in several states, it will be deemed to have only national citizenship"). Second, even under the cases recognizing a more expansive formulation, the court would still not find that Defendant is "localized." Although Defendant's principal place of business may be in Utah, Defendant has significant business operations outside of the State. *See* Dkt. No. 49-2. According to the 2018 annual report quoted by Plaintiff earlier in this litigation, "Mountain America has 93 branch locations across five states," with "[t]wenty-four of those branch locations . . . located outside of the state of Utah." Dkt. No. 44 at 4. For its part, Defendant has represented to the court that it "likely has members in almost every state west of the Rocky Mountains and many others." Dkt. No. 45 at 3. The court notes as well the irony in Plaintiff's attempt to invoke the localization exception while also seeking to maintain its case under CAFA

---

[6] To be sure, some courts have found support for the localization doctrine in the latter half of the Supreme Court's statement in *Bankers' Trust* that the federally chartered railroad there "was incorporated under acts of Congress, not state laws; and its activities and operations were not to be confined to a single state, but to be carried on, as in fact they are, in different states." 241 U.S. at 309. While the court thinks this a thin reed on which to expand federal jurisdiction, this language would not support jurisdiction here given that Defendant's activities and operations are not confined to a single state. *See, e.g.*, Dkt. No. 49-2 at 29.

by arguing that "it can be reasonably inferred that less than two-thirds of the proposed class reside in Utah," that "thousands of class members likely reside outside the state," that "it is highly likely that class members are dispersed amongst at least five states, if not many more," that account holders "across the country have an interest in the outcome of this action," and that his "claims involve matters of national or interstate interest" because Defendant "is a federal credit union with branches in five states." Dkt. No. 44 at 4–7.[7] For all of these reasons, the court could not find that "the 'overwhelming' amount of [Defendant's] members and business are in [Utah]," as even the broader version of the localization exception would require. *Arlington Comm. Fed. Credit Union*, 57 F. Supp. 3d. at 595.[8]

*     *     *

For the forgoing reasons, the court dismisses without prejudice Plaintiff's complaint for lack of subject matter jurisdiction. **IT IS SO ORDERED.**

DATED this 30th day of April, 2020.

BY THE COURT:

Howard C. Nielson, Jr.
United States District Judge

---

[7] CAFA requires this court to decline jurisdiction if "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B).

[8] The court denies Plaintiff's request for jurisdictional discovery to develop support for applying the localization exception. As it has explained, the court does not find the cases recognizing such an exception persuasive in light of the controlling precedent and statutes that govern this case. And even if these cases were persuasive, the court could not reconcile a finding of localization in this case with the jurisdictional requirements of CAFA.